## STATE EX REL. RALPH WESLEY CRIPPEN
## v. DOUGLAS C. RIGG.

96 N. W. (2d) 875.

June 5, 1959—No. 37,750.

*Ralph Wesley Crippen,* pro se, for appellant.

*Miles Lord,* Attorney General, and *Charles E. Houston,* Solicitor General, for respondent, warden of Minnesota State Prison.

KNUTSON, JUSTICE.

This is an appeal from an order of the District Court of Washington County denying petitioner's application for a writ of habeas corpus. Respondent now moves to dismiss the petition.

In order to understand the nature of the claims of petitioner it is desirable that some of the salient facts pertaining to the commission of the crime for which he was sentenced be stated.

Petitioner enlisted in the United States Army on March 19, 1948. He served 3 years and 9 months, of which 3½ years were served in the Republic of Panama. While in the army he was charged with absenting himself from the organization, feloniously stealing a 45-caliber pistol belonging to an officer, unlawfully misappropriating a truck, and taking the truck and pistol into the Republic of Panama against orders. He entered a plea of not guilty to these charges and was found guilty after a trial; he was reduced to the lowest enlisted grade, confined to hard labor for 5 months, and subjected to a forfeit of $50 a month of his pay. Aside from that, he had no previous record until he returned from his military service in the fall of 1951. He was sent to Camp McCoy and received a 45-day furlough on November 30, 1951. He then returned to his home in Mankato, Minnesota, and remained in the vicinity of Mankato during the month of December 1951.

On the morning of December 20, 1951, petitioner arrived by bus in Owatonna. He had some drinks of beer and intoxicating liquor that day. At about 3:15 in the afternoon he entered the Bion Liquor Store in Owatonna and asked the clerk to change two dimes into nickels. The clerk proceeded to comply, and, when the clerk opened the cash register, petitioner pulled out of his pocket a metal replica of a German Luger pistol and ordered the clerk to lie down on the floor. This imitation pistol was about 10 inches long and weighed slightly under 2 pounds. It had a hole in the end of the barrel and, for all intents and purposes, exactly resembled a Luger pistol. After the clerk had complied with petitioner's order to lie down on the floor, petitioner proceeded to inflict upon him a brutal beating with the pistol, striking him on the head with such violence that the doctor who attended the clerk stated that he had a hole in his head about the size of a lemon. The clerk was taken to a hospital and died 8 days later without having regained consciousness. Either before or after administering this beating to the clerk, petitioner took approximately $250 from the cash register and also some envelopes and blank checks. He then left the liquor store and hired a taxi to take him to Faribault, Minnesota. The cab

driver reported that petitioner appeared sane and sober and that he carried on a logical conversation. Upon his arrival in Faribault petitioner purchased a 1941 Buick, for which he made a downpayment of $175. He spent that evening with a girl friend in Morristown, St. Peter, and Waseca. The following morning he returned to Morristown and was there apprehended by the sheriffs of Steele and Rice Counties and an agent of the State Bureau of Criminal Apprehension. He was then questioned and freely admitted that he had committed the robbery and that he had beat the clerk of the liquor store over the head with the so-called toy pistol.

Petitioner was indicted by the grand jury of the crime of murder in the first degree on January 10, 1952. He entered a plea of not guilty to the crime charged in the indictment. He retained and was represented by Attorney Kroon of the firm of Regan, Regan & Kroon of Mankato. After having entered a plea of not guilty to the crime of murder in the first degree, petitioner made a written application to the court to be permitted to plead guilty to murder in the second degree. The trial court held a hearing on February 20, 1952, with reference to such application, at which time petitioner was present in court with Attorney Kroon, and the record of that proceeding shows the following interrogation:

"MR. KROON: If it please the Court, an application of Ralph Wesley Crippen—wishes to enter a plea of guilty to murder in the second degree.

"THE COURT: Do you have the application here?

"MR. KROON: I have, your Honor.

"THE COURT: The record may show that counsel for the defendant has handed to the Court an application to plead guilty to murder in the second degree. Have you seen it and wish to examine it, Mr. Casey?[1]

"MR. CASEY: I have seen the application and am satisfied with it, your Honor.

"THE COURT: The record may show that the County Attorney has affixed his signature to the bottom of the application in the form of

---

[1]Byron J. Casey is county attorney of Steele County.

44

approval. Do you have anything to present in connection with your reasons for concurring?

"Mr. Casey: I have written reasons for concurring, your Honor, which I will file at this time.

"The Court: Will the defendant stand, please. I am handing you an instrument entitled Application to Plead Guilty to Indictment or Information. Will you look at it, please. Does it contain your signature?

"The Defendant: Yes, sir, it does.

"The Court: Did you sign that of your own free will and accord?

"The Defendant: Yes, sir.

"The Court: Did you read it before you signed it?

"The Defendant: Yes, sir.

"The Court: Do you know what is in it?

"The Defendant: Yes, sir.

"The Court: Have you talked this matter over with your attorneys?

"The Defendant: Yes, sir.

"The Court: There are two charges pending, one is robbery in the first degree and the other is this murder charge. Are you and your counsel satisfied to proceed with this murder charge before proceeding with the robbery charge?

"Mr. Kroon: Yes, your Honor.

"The Court: Are you willing to do that?

"The Defendant: Yes."

Thereafter the court permitted the filing of the application to plead to a charge of a lesser degree than that charged in the indictment, whereupon petitioner entered a plea of guilty to the charge of murder in the second degree.

Following the acceptance of this plea, the county attorney made a statement as to his investigation of the crime in the presence of petitioner and his attorney, a summary of which has been related above. Among other things he said:

"* * * I have never rushed the matter of pleading guilty. I think it is a serious crime. I think a plea of second degree murder, *which carries the same sentence as first degree murder,* is something that the defendant should consider and be sure that he wants to do it.

For that reason I have waited two weeks before appearing in court. I have purposely stalled the defendant and the defendant's attorney in rushing over here. I don't want it said that this plea was made without the defendant having fully considered the matter, and if I have been dilatory in waiting two weeks I believe it is something I should have done. As far as I can find out, the defendant is clearly guilty of this charge. I have consented to the plea of second degree murder *because it carries a life imprisonment sentence the same as does first.*" (Italics supplied.)

Petitioner's attorney objected to one statement regarding petitioner's sanity but otherwise said: "To the rest of the statement we have no objection."

Petitioner then was examined for the purpose of imposing sentence, and, to be doubly sure that he understood the nature of the crime to which he was entering a plea of guilty, the court asked these questions:

"Q   The County Attorney has made some reference to your suggestion that you wanted to enter a plea of guilty, a suggestion made ten days or two weeks ago. Did you have some such talk with the Sheriff of Steele County?

"A   Yes, sir, I did.

"Q   And since that time have you talked the matter over with Mr. Kroon or Mr. Regan, one of your attorneys?

"A   Yes, sir, I have.

"Q   They have explained to you what the penalty involved is for second degree murder?

"A   Yes.

"Q   And you know what that is?

"A   Yes, sir.

"Q   So that there is no doubt in your mind then, is there, that when you have now entered a plea of guilty to the commission of the crime of murder in the second degree you understand what is taking place?

"A   Yes, sir, I do."

Thereupon the court imposed sentence, and since that time petitioner has been confined in the state penitentiary at Stillwater, Minnesota.

On November 26, 1958, petitioner filed a petition for a writ of

habeas corpus in the District Court of Washington County, alleging that he was unlawfully imprisoned. The matter came on for hearing, and on December 13, 1958, an order was filed by the Honorable Leonard Keyes denying the petition, in which he found, among other things, that the petition was sham and frivolous and shows on its face that it has no merit. An appeal was taken, and the matter is here de novo.

While the petition and brief submitted in support thereof are not models of clarity, they have been prepared and submitted by petitioner in his own behalf, and we have carefully examined the record in order to ascertain if there is any merit to the petition at all. Essentially, it is petitioner's claim: (1) That the trial court erred in permitting him to file an application for leave to plead guilty to a lesser crime than that covered by the indictment; (2) that petitioner was not aware nor apprised of the fact that in pleading guilty to second-degree murder the sentence of the court would be for life imprisonment; and (3) that the counsel employed by petitioner was inadequate and failed to protect his rights.

1. Petitioner claims that under M. S. A. 628.32 an application for leave to plead to a lesser degree of the crime of which he is charged in an indictment has no application to cases involving possible incarceration in the state penitentiary for life. Section 628.32, subd. 1, provides as follows:

"In all cases where a person charged with a criminal offense shall have been held to the district court for trial by any court or magistrate, and in all cases where any person shall have been committed for trial and is in actual confinement or in jail by virtue of an indictment or information pending against him, the court having trial jurisdiction of such offense or of such indictment or information or proceedings shall have the power at any time, whether in term or vacation, upon the application of the prisoner, in writing, stating that he desires to plead guilty to the charge made against him by the complaint, indictment, or information, or to a lesser degree of the same offense, to direct the county attorney to file an information against him for such offense, if any indictment or information had not been filed, and, upon the filing of such information and of such application, the court may receive and record a plea of guilty to offense charged in such indictment

or information, or to a lesser degree of the same offense, and cause judgment to be entered thereon and pass sentence on such person pleading guilty, and such proceedings may be had either in term time or in vacation, at such place within the judicial district where the crime was committed as may be designated by the court."

Section 628.32, subd. 6, reads:

"This section shall not apply to cases where the punishment for the offense to which the prisoner desires to plead guilty is imprisonment for life in the state prison."

Section 630.30 reads as follows:

"When any person charged with crime shall be permitted by any court or magistrate to plead guilty to a lesser degree of the offense than that which he is charged, or to a lesser offense included within the offense with which he is charged, the reasons for the acceptance of such plea shall be set forth in an order of the court directing such acceptance and entered upon the minutes, and any recommendations of the county attorney or other prosecuting officer in reference thereto, with his reasons therefor, shall be stated in writing and filed as a public record with the official files of the case."

By its very terms, § 628.32, subd. 6, has no application to a charge of murder in the second degree. We think that clearly, under § 630.30 and the general practice which prevails throughout the State of Minnesota, petitioner may be permitted, with the consent of the court, to enter a plea of guilty to a charge of a lesser degree of any crime of which he is charged in an indictment. There is no merit to this contention.

2. Petitioner next contends that when he entered a plea of guilty to murder in the second degree he did not comprehend that the punishment would be the same as it is for murder in the first degree. An examination of the record clearly demonstrates that the court was more than usually cautious about ascertaining whether petitioner understood that punishment for murder in the second degree was the same as murder in the first degree. In addition to that, petitioner, who was represented by competent counsel of his own choosing, several times admitted that he had conferred with his counsel and that he fully under-

stood the nature of his plea. Clearly, petitioner's claims in this respect are sham and frivolous and are entitled to no consideration in view of this record.

3. The only other claim is that petitioner's counsel failed to adequately protect his rights. He was represented by competent counsel of his own choosing, and there is absolutely no merit to this claim.

A careful examination of the petition, briefs, and entire record in this matter clearly demonstrates that there is no merit to the application at all. The petition for a writ was properly denied by the district court and should be and is hereby denied and the appeal dismissed.

So ordered.