### In the Matter of the WELFARE OF K.A.A., Child.

### No. C7–86–1109.

Supreme Court of Minnesota.

Aug. 21, 1987.

Hugh A. Cameron, Itasca Co. Atty., W. James Mason, Asst. Co. Atty., Grand Rapids, for appellant.

Steven M. Bradt, Grand Rapids, for respondent.

Jean Gerval, Minnesota Co. Atty's Ass'n, Thomas L. Johnson, Hennepin Co. Atty., Vernon E. Bergstrom, Chief, Appellate Section, Beverly J. Wolfe, Asst. Hennepin Co. Atty., Minneapolis, for amicus curiae.

KELLEY, Justice.

May a juvenile alleged by the state to be delinquent, over the State's objection, waive the jurisdiction of the juvenile court in favor of a criminal prosecution as an adult in district court? The court of appeals, affirming the juvenile court below, held that a juvenile may make such a waiver.[1] We disagree and reverse.

On April 1, 1986, a delinquency petition filed in Itasca County Juvenile Court alleged that respondent, then 17 years old, had been driving a motor vehicle while under the influence of alcohol, had been driving an unregistered and uninsured motor vehicle and had fled from a police officer. Respondent had been judged delinquent on prior occasions in juvenile court, including an adjudication in the fall of 1985. In the disposition order in the fall of 1985, the juvenile court ordered respondent be placed in the custody of the Superintendent of the Minnesota Home School at Sauk Centre, Minnesota. However, the juvenile court stayed the execution of the order conditioned upon respondent maintaining his good behavior. The court then stated specifically that "in the event there be the slightest infraction of law or breach of good conduct, the court will lift that stay and transfer the juvenile to the Superintendent of the Minnesota Home School."

Thus, when the instant petition was filed, it was apparent that should respondent again be adjudged delinquent, he faced almost certain detention at the Minnesota

1. *In re the Welfare of K.A.A.*, 397 N.W.2d 4 (Minn.App.1986).

Home School as provided in the 1985 order. In an effort to avoid this consequence, respondent moved the juvenile court for either an order referring him to district court for trial as an adult, or, alternatively, for a jury trial in juvenile court. Over the State's objection, the juvenile court granted respondent's reference motion. The court of appeals affirmed. It held that while juveniles have no right to jury trials in juvenile courts, they may waive their statutory rights to special treatment as juveniles and therefore they may opt out of juvenile courts for trials as adults in district courts in criminal matters. That ruling poses the sole issue before this court, to-wit: whether the juvenile may waive juvenile court jurisdiction without the State's concurrence.[2]

Our state constitution vests in the legislature the power to create courts other than the constitutionally mandated supreme court and district court:

> The judicial power of the state is vested in a supreme court, a court of appeals, if established by the legislature, a district court and *such other courts, judicial officers and commissioners with jurisdiction inferior to the district court as the legislature may establish.*

**2.** Respondent, the party aggrieved by the court of appeals' opinion on the right to jury trial issue, has specifically waived the issue in his brief by stating "Respondent respectfully asserts that the issue of juvenile's right to a jury trial is not relevant to these proceedings * * *." In light of the United States Supreme Court's decision in *McKeiver v. Pennsylvania,* 403 U.S. 528, 91 S.Ct. 1976, 29 L.Ed.2d 647 (1971) (plurality op.) (no constitutional right to a jury trial in juvenile court), we agree with respondent's assessment.

**3.** These exceptions appear in Minn.Stat. § 260.-111, subd. 1 (1986) as follows:

> Except as provided in sections 260.125 [juveniles referred to district court] and 260.193 [minor traffic matters], the juvenile court has original and exclusive jurisdiction concerning any child who is alleged to be delinquent, a juvenile traffic offender * * * and in proceedings concerning any minor alleged to have been a delinquent * * * or a juvenile traffic offender prior to having become 18 years of age. The juvenile court shall deal with such a minor as it deals with any other child who

Minn. Const. art VI, § 1 (emphasis supplied). With the adoption of the Juvenile Court Act, now coded Minn.Stat. §§ 260.-011–.301 (1986), the legislature utilized its constitutionally granted authority to create a special court which, with two stated exceptions, has exclusive jurisdiction over juveniles claimed to be delinquent. The legislature specifically manifested that its purpose in creating the juvenile courts was to promote the public safety by means which are fair and just and that recognizes "the unique characteristics and needs of children." Minn.Stat. § 260.011, subd. 2 (1986).

The two exceptions to this legislatively created exclusive jurisdiction occurred (1) if the juvenile is referred by the juvenile court to the district court for trial as an adult (Minn.Stat. § 260.125 (1986)), and (2) if the alleged delinquent offense involved minor traffic offenses (Minn.Stat. § 260.-193 (1986)).[3]

The accusations in the April 1986 petition involve more than "minor traffic offenses." Therefore, the juvenile court has exclusive jurisdiction over this matter unless the reference statute (Minn.Stat. § 260.125 (1986)) provides respondent with the opportunity to be tried as an adult on a criminal complaint filed in district court.[4]

alleged to be delinquent or a juvenile traffic offender.

A "minor traffic offense" is defined as being a "violation of a state or local traffic law, ordinance or regulation, or a federal, state, or local water traffic law constituting an offense punishable only by fine of not more than $100. Minn. Stat. § 260.193, subd. 1(c) (1986).

**4.** We are unable to agree with any contention that article 6, section 3 of the Minnesota Constitution gives the district court jurisdiction over juveniles because it provides that the court shall have original jurisdiction in all civil and criminal cases. Our examination of the juvenile court statute leads us to conclude that the legislature had the clear intent to make laws dealing with juvenile delinquency *sui generis. See, e.g.,* Minn.Stat. §§ 260.211 and 260.215 (1986). This conclusion is supported by comments of the Interim Commission of the legislature, which, in its 1959 comment to Minn.Stat. § 260.111 wrote specifically:

> The provisions of this new section [Minn.Stat. § 260.111], together with the provisions of § 260.215 are intended to overcome the state constitutional provision giving the district

■ The reference statute allows the reference of a juvenile to district court *only* after the following procedure has been followed:

(a) A petition has been filed in accordance with the provisions of Minn.Stat. § 260.131;

(b) Notice of the reference motion has been given in accordance with the provisions of Minn.Stat. §§ 260.135 and 260.141;

(c) A hearing has been held in accordance with the provisions of Minn.Stat. § 260.155 within 30 days of the filing of the motion unless good cause is shown as to why the hearing should be held within the 30–day period;

(d) The court finds that

(1) there is probable cause the juvenile committed the offense alleged by the delinquency petition and

(2) *the prosecuting authority has proven by clear and convincing evidence that the child is not suitable for treatment or that the public safety is not served under the provisions of laws relating to the juvenile courts.*

(emphasis supplied). *See* Minn.Stat. § 260.125, subd. 2. In the instant case, apparently because the juvenile court concluded that this reference statute was inapplicable, it failed to make the findings called for by the statute. Notwithstanding that failure, we disagree, and hold that the statute is applicable.[5] The legislature's clearly expressed intent is to provide only a limited exception to the otherwise exclusive jurisdiction of the juvenile court. The exception in the statute permitting a reference to district court is limited and circumscribed, and is to be granted only after the court has made findings following the hearing provided in the statute.

court "original jurisdiction in all civil and criminal cases" * * * by defining violations of law by those under 18 as delinquency, unless the juvenile court refers the violation to a prosecuting authority for criminal proceedings.

■ Respondent argues that even if the trial court was wrong, and assuming the reference statute is applicable, it does not solely limit to the prosecutor the privilege of initiating the reference motion; the juvenile, respondent claims, may similarly bring the motion. Our analysis of the statute, as well as our examination of the rules enacted to implement the statute, leads us to reject that assertion. Admittedly, Minn. Stat. § 260.125, subd. 2 does not explicitly limit the filing of the petition to the prosecutor, but a fair reading of the statute demonstrates that the legislature clearly contemplates that a reference proceeding will be initiated solely by the prosecutor. For example, the statute requires that notice of the motion be given specifically to the juvenile. Obviously, if the legislature contemplated a petition could be initiated by the juvenile, that requirement would be unnecessary and redundant. *See, e.g.,* Minn.Stat. §§ 260.125, subd. 2(b), 260.135, and 260.141. The statute further imposes upon the state the burden of proving by clear and convincing evidence the facts necessary for the court to make the mandated findings on suitability to treatment and/or that the public safety would not be served. Minn.Stat. § 260.125, subd. 2(d)(2). Had the legislature intended that either party could bring the reference motion, it is highly doubtful that those provisions would have been made party specific. Moreover, the Rules of Procedure for Juvenile Court do not contemplate that anyone but the prosecutor may initiate the reference proceeding. *See* Minn.R.Juv.Ct. 32.01, the applicable portion of which specifically states:

Proceedings to refer a delinquency matter pursuant to Minn.Stat. 260.125 may be initiated *only* upon motion of the county attorney after a delinquency petition has been filed, pursuant to Rule 19.

5. Although the trial court concluded that respondent was unamenable to treatment, there exists neither facts in the record to sustain that conclusion, nor appropriately stated factual findings. Respondent concedes in his brief that the trial court failed to make appropriate statu-

(emphasis supplied).[6] The wording of the statute and the interpretations of it by this court by rule, leave us with no doubt that at present a juvenile cannot initiate a reference proceeding asking to be tried upon a criminal complaint as an adult in district court.

The present wording of Minn.Stat. § 260.125 seems to reflect the legislature's perception of the public policy of the state relative to the administration of juvenile matters by the courts.[7] The legislature could, and apparently did, conclude that allowing a juvenile to waive juvenile court jurisdiction for some perceived short-term benefit ignores the best interests of the State in addressing juvenile problems as well as the overall interest of the juvenile. The existing statute seems to mirror this balancing of interests. *See* Minn.Stat. § 260.125, subd 2(d).[8] Should the legislature conclude that the public policy of this state no longer requires the same degree of exclusivity of jurisdiction now lodged in the juvenile courts, it, of course, is free, by amendment to the statute, to make provision specifically authorizing the juvenile to waive the benefits of the juvenile system for treatment in favor of trial on a criminal complaint in district court as an adult; define the types and ages of alleged offenders who will have the privilege to opt out of the juvenile system; and to formulate a procedure to accomplish that result. The ultimate decision involves difficult social policy choices particularly within the province of the legislature.

In support of allowing respondent to waive juvenile court jurisdiction so as to stand trial as an adult, both courts below relied on *In re Welfare of I.Q.S.*, 309 Minn. 78, 244 N.W.2d 30 (1976). Particular reliance is placed on that part of the opinion reading:

> Although the entire juvenile system involves the waiver of certain constitutional rights in favor of the protection, programs and special features afforded juveniles, any child not wishing to avail himself of this treatment could certainly demand his constitutional right to be, for example, tried by a jury.

309 Minn. at 85, 244 N.W.2d at 37. That language, standing alone, and not considered in context, tends to support that reliance. However, examined in the context within which the statement appeared, it seems clear the statement is inapplicable to situations, such as presented here, where it is the juvenile seeking the reference and not the State. The case in which the cited language appeared was one of nine separate consolidated appeals from orders of various juvenile courts referring juveniles to the district court for trial under the criminal law as adults. While all nine cases had some common issues, several cases additionally involved specific issues addressed individually within the parameters of the opinion. *See* 309 Minn. at 89–93, 244 N.W.2d at 39–41. The quotation in the text arose in the discussion of one of those specific issues. That specific issue arose when the trial court offered the juvenile an opportunity to participate in a diversionary rehabilitation program in return for an agreement by the juvenile to waive

---

tory findings of fact to support a reference to district court.

**6.** The Minn.R. Practice for Juvenile Courts were proposed by the Supreme Court Juvenile Justice Study Commission and were adopted by this court effective May 1, 1983. The dissent seemingly implies that prior to the adoption of those rules, a juvenile had a right to demand a jury trial within the criminal justice system. The fact is that prior to the adoption of the Rules a juvenile had no more nor less right to opt out of the juvenile system than now. The change made in the former practice by enactment of Rule 32.01 only eliminated the prior procedure which permitted the juvenile judge to initiate the reference. *See* 12 J. Sonsteng and R. Scott,

*Minnesota Practice, Juvenile Law and Practice* R. 32.01 (1985). It is also, perhaps, significant that even under the former practice when the reference was initiated by the judge, the county attorney had to concur or the juvenile court retained the matter for disposition.

**7.** For a general discussion of mechanisms for transferring juvenile offenders to the adult criminal justice system, and the policy reasons underlining the mechanisms so structured, *see* Feld, Juvenile Court Legislative Reform and the Serious Young Offender: Dismantling the "Rehabilitative Ideal", 65 Minn.L.Rev. 167 (1981).

**8.** *See, e.g.* Feld (supra) pp. 191–197.

his constitutional right to a speedy trial in the event criminal prosecution became necessary at a later time in district court. The juvenile declined this offer. He later claimed his constitutional rights were violated by being forced to elect between the choices offered. On appeal that specific issue was framed, "whether a lower court order suggesting the waiver of a right to a speedy trial is an impermissible burden upon the juvenile's exercise of a constitutional right." In holding it was not, we used the quoted language contained at 309 Minn. at 85, 244 N.W.2d at 37. Thus, the context within which the relied upon quotation lies contains critical facts not present in the instant case. These facts, dissimilar to those in the instant case, furnish the background for the use of the quoted language. The language, however, is irrelevant to the resolution of the issue presented to us in this case.

■ The dissent raises an equal protection issue neither briefed nor argued by the parties in this court, nor was it ruled on by the court of appeals. However, assuming the issue is properly before us, we conclude any claim of deprivation of equal protection of the laws must be rejected. Initially, we observe that we have already rejected such a claim when the juvenile contended our statute was constitutionally flawed when it permitted the prosecutor to initiate the reference proceeding. See I.Q.S., 309 Minn. at 84, 86, 244 N.W.2d at 36–37. Secondly, because respondent is not set apart for different treatment on the basis of race, alienage, or membership of a distinct minority he is not a member of a suspect class, nor does the processing of respondent's case in the juvenile system deprive

him of a fundamental right. *McKeiver v. Pennsylvania*, 403 U.S. 528, 91 S.Ct. 1976, 29 L.Ed.2d 647 (1971).[9] Therefore, whether our juvenile court statute passes constitutional muster when challenged on equal protection grounds depends on the existence or lack of existence of a rational basis supporting the legislative decision to handle juveniles involved in the criminal justice system differently than adults.

The legislature itself has articulated a rational basis for treating juveniles differently than adults.[10] The Juvenile Court Act implemented a system of addressing adolescent problems in a fair and just manner to promote the personal and social growth of juveniles. Nevertheless, in enacting the Juvenile Court Act, the legislature clearly indicated that it was cognizant of the fact that in both the federal and state criminal justice systems prosecutors have had broad discretion in all aspects of the charging process and the enforcement of the laws. *See, e.g., Wayte v. United States*, 470 U.S. 598, 607–08, 105 S.Ct. 1524, 1531, 84 L.Ed.2d 547 (1985) (and cases cited therein); *State v. Herme*, 298 N.W.2d 454, 455 (Minn.1980). To that end, in certain limited instances and with certain procedural proscriptions, the prosecutor was given the option of initiating reference proceedings. Absent the existence of precedent conditions, the legislature mandated the charges against a juvenile should otherwise by handled in juvenile court. We find no denial of equal protection.

Finally, the court of appeals erroneously relied upon Minn.R.Juv.Ct. 15.03, the rule affirming the juvenile's privilege to waive constitutional rights, as support for affirming the lower court.[11]

**9.** The *McKeiver* plurality stated "If in its wisdom, any state feels the jury trial is desirable in all cases [involving juveniles] or in certain kinds, there appears to be no impediment to its installing a system embracing that feature. That, however, is the state's privilege and not its obligation." 403 U.S. at 547, 91 S.Ct. at 1987.

**10.** *See* Minn.Stat. § 260.011, subd. 2 (1986) which so far as applicable reads:
The purpose of the laws relating to children alleged or adjudicated to be delinquent is to promote the public safety and reduce juvenile delinquency by maintaining the integrity of

the substantive law prohibiting certain behavior and by developing individual responsibility for lawful behavior. This purpose should be pursued through means that are fair and just, that recognize the unique characteristics and needs of children, and that give children access to opportunities for personal and social growth.

**11.** Rule 15 is entitled *Waiver of Counsel and Other Constitutional Rights*
Rule 15.01 *Applicability*

Nothing in either the federal or state constitutions afford juveniles any constitutional right to have their antisocial problems addressed within the jurisdiction of the juvenile court. Therefore, Rule 15.03 is inapplicable. However, certain statutory rights are afforded juveniles by the Juvenile Court Act. At least some of those statutory rights may be waivable. For example, a juvenile may waive the right to a reference hearing or other statutory rights affording protections to juveniles. *See, e.g., Kent v. United States*, 383 U.S. 541, 86 S.Ct. 1045, 16 L.Ed.2d 84 (1966). However, both the Juvenile Court Act and the Juvenile Court Rules do not contemplate that a juvenile may initiate a reference proceeding by "waiving" the jurisdiction of the juvenile court afforded by the Act.

Unless and until the legislature amends the reference statute, the only method by which a juvenile alleged to be delinquent may be tried on a criminal complaint as an adult in district court, is by a proceeding initiated by the State in which the court finds the State has proven by clear and convincing evidence that the juvenile is not suitable for treatment or that the public safety is not served by the juvenile court laws. Minn.Stat. § 260.125, subd. 2 (1986). That statutory procedure was not followed in the instant case in the juvenile court. Accordingly, we reverse.

SCOTT, Justice (dissenting).

This case clearly presents an equal protection problem. A juvenile—who is not suitable for treatment within the juvenile justice system—should not be denied the right to a jury trial in the criminal system by the prosecutor's refusal to make a reference motion. The contrary would seem more logical and constitutional. I therefore respectfully dissent.

A novel situation arises in this case in which the juvenile is requesting to be tried as an adult and the prosecutor is resisting reference for criminal prosecution. The far more common case reverses these positions. *See, e.g., In re Welfare of I.Q.S.*, 309 Minn. 78, 244 N.W.2d 30 (1976). Because of the novelty of this role reversal, this situation does not fit comfortably within either Minn.Stat. § 260.125 (1986) or Minn.R.Juv.Ct. 32.01.

As the majority notes, Minn.Stat. § 260.-125 "does not solely limit the filing of the [reference] petition to the prosecutor." That statute, however, does appear to contemplate the prosecutor as the moving party. This is no more than a reflection of the normal situation in which the prosecutor is seeking to try the child as an adult and the child is attempting to retain the protections provided by the juvenile system. Similarly, Rule 32.01 provides that "[p]roceedings to refer a delinquency matter pursuant to Minn.Stat. 260.125 may be initiated only upon motion of the county attorney after a delinquency petition has been filed." This rule was a change from the former practice under which either the court or the prosecuting attorney could move for reference. The change was made to retain the court's "perceived and actual" neutrality; it was not intended to infringe the juvenile's right to demand a jury trial within the criminal system if that juvenile is not suitable for treatment within the juvenile system. *See generally* 12 J. Sonsteng and R. Scott, *Minnesota Practice, Juvenile Law and Practice* R. 32.01 (1985). When this court stated that "[a]lthough the entire juvenile system involves the waiver of certain constitutional rights in favor of the protection, programs and special features afforded juveniles, *any child not wishing to avail himself of this treatment could certainly demand his constitutional right to be, for example, tried by a jury*," *In re Welfare of I.Q.S.*, 309 Minn. at 85, 244 N.W.2d at 37 (emphasis added), we meant just that—that a juvenile may be able to elect to be tried as a criminal with all the constitutional rights afforded an adult. I would hold that when—as here—a juvenile who requests to be tried as an adult is alleged to have violated a state or local law or ordinance after becoming 14 years of age, the juve-

---

Rule 15 governs the waiver of counsel and other constitutional rights, with the exception of the waiver of rights set forth in Rule 6.

nile court may enter an order referring the alleged violation to the appropriate prosecuting authority if that court finds there is probable cause to believe the child committed the alleged offense and the child is not suitable to treatment or the public safety is not served under the provisions of laws relating to juvenile courts. *Cf.*, Minn.Stat. § 260.125 (1986).

The United States Supreme Court has observed that "neither the Fourteenth Amendment nor the Bill of Rights is for adults alone." *In re Gault*, 387 U.S. 1, 13, 87 S.Ct. 1428, 1436, 18 L.Ed.2d 527 (1967). In *McKeiver v. Pennsylvania*, 403 U.S. 528, 545, 91 S.Ct. 1976, 1986, 29 L.Ed.2d 647 (1971), the Court held that due process does not require a jury trial in the juvenile court's adjudicative stage. Here, however, there is more involved than a request for a jury trial in juvenile court—this person is requesting a jury trial with the attendant rights guaranteed all citizens.

The most persuasive argument for the more limited constitutional protections available to a juvenile within the juvenile system is that these rights are surrendered in return for other benefits. *See, e.g., In re Gault*, 387 U.S. at 21, 87 S.Ct. at 1440 ("It is claimed that juveniles obtain benefits from the special procedures applicable to them which more than offset the disadvantages of denial of the substance of normal due process."). The most substantial of these benefits is that the child is to be treated or rehabilitated rather than punished. *Cf. id.* 387 U.S. at 16, 87 S.Ct. at 1437.

K.A.A., however, has been found by the trial court to be not suitable for treatment within the juvenile system. This juvenile would be denied constitutional protections without receiving the benefits of the juvenile system if the juvenile court were to retain jurisdiction. The prosecutor's refusal to refer for adult prosecution a juvenile who is not suitable for treatment creates two classes of juveniles. Neither class is suitable for treatment and neither receives the benefits of treatment, but one of these classes receives the full constitutional protections available to criminal defendants.

Commentators have noted that under the principles stated in *Kent v. United States*, 383 U.S. 541, 86 S.Ct. 1045, 16 L.Ed.2d 84 (1966), this result may be unconstitutional as denying equal protection of the laws. *See* Unif.Juv.Ct. Act § 34, 9A U.L.A. 51 (1968) (renamed Model Juv.Ct. Act 1985).

I too believe that the prosecutor's authority to deny a juvenile full constitutional protections even when the juvenile is not suitable for treatment and is willing to waive any other benefits available in the juvenile system denies that juvenile equal protection of the laws. I, therefore, dissent.