Jerry VANG, a/k/a Vang Toua Xeng Vang, petitioner, Appellant,

v.

STATE of Minnesota, Respondent.

No. A09–2297.

Supreme Court of Minnesota.

Sept. 9, 2010.

Melissa Sheridan, Assistant State Public Defender, Eagan, MN, for appellant.

Lori Swanson, Attorney General, Susan Gaertner, Ramsey County Attorney, Mark Nathan Lystig, Assistant County Attorney, St. Paul, MN, for respondent.

## OPINION

MEYER, Justice.

The juvenile court convicted and sentenced 14–year–old appellant Jerry Vang as an adult in this first-degree murder case. Vang, who was indigent, made a timely request that the State Public Defender's Office (SPDO) file a direct appeal on his behalf. The SPDO did not file a direct appeal. Well after the time to file a direct appeal expired, the SPDO filed a petition for postconviction relief on behalf of Vang. The postconviction court denied Vang's request for relief. We hold that Vang's convictions and sentences are void because the juvenile court lacked subject-matter jurisdiction to convict and sentence Vang as an adult. Accordingly, we reverse and remand.

On August 7, 2001, Kor Vang met 14-year-old appellant Jerry Vang (Vang) at Vang's house to drive together to a funeral. On their way to the funeral, the two turned into an alley and saw several people, including Kao Vang and Kou Vang, "standing around." Kor, who was driving, stopped the car and backed up. Vang and Kao "got into a verbal argument" regarding problems between their younger brothers. Vang left the car, took out a loaded nine-millimeter gun, and shot Kao "six or seven times." Vang also shot Kou twice. Vang returned to the car, and Kor drove the two to Chee Thao's house, where Vang was arrested an hour later. Although Kou survived the shooting, Kao did not.

On August 10, 2001, the State filed a delinquency petition in Ramsey County Juvenile Court alleging first-degree murder (drive-by shooting), Minn.Stat. § 609.185(3) (2008), and second-degree murder (drive-by shooting), Minn.Stat. § 609.19, subd. 1(2) (2008), involving the death of Kou. The delinquency petition also alleged attempted first-degree murder (drive-by shooting), Minn.Stat. §§ 609.17, .185(3) (2008), involving Kao. In accordance with Minn. R. Juv. Delinq. P. 18.02, subd. 2, the State presented Vang's case to a grand jury for consideration of indictment under Minn.Stat. ch. 628 (2008). The grand jury indicted Vang on the three charges alleged in the juvenile delinquency petition.

On September 17, 2001, the State filed a motion to certify the proceedings for action under the laws and court procedures controlling adult criminal violations. Vang underwent a certification study, psychological evaluation, and neuropsychological evaluation.

On November 6, 2001, Vang made an in-custody appearance before the Ramsey County Juvenile Court. The parties informed the juvenile court that they had negotiated a resolution of Vang's case. Vang's attorney asked Vang a series of leading questions to confirm that Vang understood he was "giving up" his certification hearing, would be "treated as an adult," and would be sentenced as an adult. However, Vang did not stipulate to any of the factors required to certify the proceedings for action under the laws and court procedures controlling adult criminal violations. The juvenile court made no findings or ruling on the adult certification issue. Instead, the juvenile court simply accepted Vang's guilty pleas to first-degree murder (drive-by shooting) and the attempted first-degree murder (drive-by shooting). Based on Vang's guilty pleas, the court convicted Vang of adult criminal violations and imposed an adult sentence of life imprisonment for the first-degree murder (drive-by shooting) conviction and a concurrent 200-month prison sentence for the attempted first-degree murder (drive-by shooting) conviction.

On November 7, 2001, the juvenile court issued a written order certifying the proceedings for action under the laws and court procedures controlling adult criminal violations. The order was captioned "Juvenile Division" and listed the juvenile court file numbers. The juvenile court found that Vang "knowingly and intelligently waived his right to a certification hearing." The juvenile court also found that Vang had pleaded guilty to the first-degree charges and that the second-degree charge had been dismissed, but made no other findings.

Vang, who was indigent, wrote to the SPDO on November 26, 2001, and requested a public defender to represent him in appealing his convictions. The SPDO sent Vang the necessary appeal forms, which he completed and returned on January 22, 2002, within the time for filing a notice of

appeal.[1] On February 1, 2002, a public defender wrote to Vang and stated that there was "nothing the public defender could do for [Vang]." Vang wrote back within two weeks to submit his request again. The office sent Vang another letter stating that there was "nothing the public defender's office could do for [Vang]." Vang sent three additional letters—in February 2002, April 2005, and June 2005— reiterating his request. Each time, the SPDO responded that a public defender would not represent Vang. In October 2008 Vang wrote again to ask for a public defender to represent him in appealing his convictions. The office assigned a public defender in March 2009.

On July 20, 2009, Vang's public defender filed a petition for postconviction relief. Vang argued that his adult certification was invalid, that he received ineffective assistance of trial counsel, and that the court should consider the petition in the interests of justice. The postconviction court denied Vang relief. This appeal followed.

## I.

■ As a threshold matter, the State argues that Vang's postconviction claims are barred by the two-year statute of limitations for filing a postconviction petition, Minn.Stat. § 590.01, subd. 4 (2008). We need not and do not decide the postconviction statute-of-limitations issue because, as discussed below, we conclude that the exceptional and extraordinary circumstances

of Vang's case warrant the exercise of our inherent authority to directly review the juvenile court's actions.

We have "appellate jurisdiction in all cases." Minn. Const. art. VI, § 2. In *State v. Wingo*, 266 N.W.2d 508, 511 (Minn. 1978), we interpreted Minn. Const. art. VI, § 2 as granting us "constitutionally independent authority to review determinations by the other state courts." In extremely rare and exceptional cases, we have invoked this inherent authority to hear an appeal. *See State v. Lessley*, 779 N.W.2d 825, 832 (Minn.2010); *State v. Losh*, 721 N.W.2d 886, 890 n. 3 (Minn. 2006); *see also In re Welfare of J.R., Jr.*, 655 N.W.2d 1, 4 (Minn.2003) (explaining that it is only an exceptional case that leads us to invoke our inherent powers).

■ Vang's case is a rare and exceptional case both procedurally and substantively. Vang was only 14 years old when he asked the SPDO to file a direct appeal on his behalf. The record contains uncontroverted documentary evidence that Vang made his request to the SPDO well within the 90–day period to file a direct appeal. Vang completed all the necessary SPDO forms and was indigent at the time of his request. Vang persistently requested that the SPDO file a direct appeal on his behalf. When the SPDO denied Vang's initial request, Vang mailed a second letter to the SPDO before the 90–day period to file a direct appeal expired. Nonetheless, the SPDO never filed a direct appeal on Vang's behalf.[2] The postconviction peti-

---

1. Vang's sentences were imposed on November 6, 2001. Under Minn. R.Crim. P. 28.02, subd. 4(3)(a), a defendant has 90 days to appeal a final judgment, so Vang had until February 4, 2002, to file a direct appeal. If the defendant is financially and otherwise eligible for public defender representation, the SPDO "must provide representation in felony cases regarding judicial review or an evalua-

tion of the merits of a judicial review." Minn. R.Crim. P. 28.02, subd. 5(5).

2. "[A] lawyer who disregards specific instructions from the defendant to file a notice of appeal acts in a manner that is professionally unreasonable." *Roe v. Flores–Ortega*, 528 U.S. 470, 477, 120 S.Ct. 1029, 145 L.Ed.2d 985 (2000). "When counsel fails to file a requested appeal, a defendant is entitled to a

tion filed by the SPDO in this case presents the first review of Vang's convictions and sentences. Substantively, Vang's case involves a nonwaivable subject-matter jurisdiction claim that renders Vang's convictions and sentences legally void. In light of these exceptional and extraordinary circumstances, we exercise our inherent authority to directly review the juvenile court's actions. Because our review is akin to a direct appeal, we need not and do not decide the postconviction statute-of-limitations issue.

## II.

■ On appeal, Vang claims his adult convictions and sentences are void for lack of subject-matter jurisdiction. We agree.

The juvenile court has original and exclusive jurisdiction in proceedings concerning children alleged to be delinquent prior to having become 18 years of age. Minn. Stat. § 260B.101, subd. 1 (2008). Under the Juvenile Court Act, Minn.Stat. chs. 260 and 260B, a juvenile court does not have the authority to impose adult sentences. *See* Minn.Stat. § 260B.198 (2008) (listing the dispositions the juvenile court may impose on delinquent children). No adjudication on the status of any child in the jurisdiction of the juvenile court shall be deemed a conviction of crime, except as provided by Minn.Stat. §§ 260B.245, .255 (2008). *See* Minn.Stat. § 260B.245, subd. 1(a).

■ A child may not waive the jurisdiction of the juvenile court. *In re the Welfare of K.A.A.*, 410 N.W.2d 836, 842 (Minn. 1987). Instead, the Juvenile Court Act and the Minnesota Rules of Juvenile Delinquency Procedure define the process by which a juvenile court terminates its original and exclusive jurisdiction. The process is commonly referred to as "adult

certification" and involves the issuance of a juvenile court order certifying the proceedings for action under adult criminal laws and procedures. *See* Minn.Stat. § 260B.125 (2008); Minn. R. Juv. Delinq. P. 18.

The juvenile court may certify the proceeding for action under adult criminal laws and procedures when a child who is at least 14 years old is alleged to have committed a crime that would be a felony if committed by an adult. Minn.Stat. § 260B.125, subd. 1; Minn. R. Juv. Delinq. P. 18.01, subd. 1. The juvenile court must hold a certification hearing. *Id.*, subd. 2(4). At the certification hearing, the prosecutor shall present evidence to support certification. Minn. R. Juv. Delinq. P. 18.05, subd. 4(D). The prosecuting attorney and the child's counsel have the right to present evidence and witnesses, cross-examine witnesses, and present arguments for or against certification. Minn. R. Juv. Delinq. P. 18.05, subd. 4(A). Evidence presented may include any evidence, including reliable hearsay and opinions, except privileged communications. *Id.*, subd. 4(B). All evidence considered by the court regarding certification must be included in the court record. *Id.*

■ A child may waive the right to a certification hearing if the waiver is made knowingly, voluntarily, and intelligently after the child is fully and effectively informed of the right. Minn.Stat. § 260B.163, subd. 10(a) (2008); Minn. R. Juv. Delinq. P. 18.05, subd. 1(C). The child's waiver, however, extends only to the hearing and not the entire certification process. *See K.A.A.*, 410 N.W.2d at 842 (stating that a child may waive a certification hearing or other statutory rights afforded to children under the Juvenile Court Act but that the Act does not con-

new appeal without showing that his appeal would likely have had merit." *Id.*

template that a child may waive the jurisdiction of the juvenile court).

■ The court may certify the proceeding for action under adult criminal laws and procedures only if the prosecuting attorney has demonstrated by clear and convincing evidence that retaining jurisdiction in juvenile court does not serve public safety. Minn.Stat. § 260B.125, subd. 2(6)(ii); Minn. R. Juv. Delinq. P. 18.06, subds. 1–2. In determining whether certification serves public safety, the court must consider: the seriousness of the alleged offense, the child's culpability, the child's prior record of delinquency, the child's programming history, the adequacy of punishment or programming available in the juvenile justice system, and the dispositional options available for the child. Minn. R. Juv. Delinq. P. 18.06, subd. 3. In considering these factors, the court must give greater weight to the seriousness of the offense and the child's prior record. *Id.* Although the juvenile court is not required to make specific findings on each factor, the juvenile court must make a statement on the record that sufficiently identifies the statutory basis on which the court relied and that demonstrates the court fully investigated the matter and carefully considered its decision. *In re the Welfare of I.Q.S.*, 309 Minn. 78, 86, 244 N.W.2d 30, 38 (1976).

If the court decides to certify the proceedings, Minn. R. Juv. Delinq. P. 18.08, subd. 2, sets forth two different procedures for terminating the juvenile court's jurisdiction, depending on whether the alleged offense was committed in the same county where certification is ordered. First, if the alleged offense was committed in the same county where adult certification is ordered, "juvenile court jurisdiction terminates immediately and the prosecuting attorney shall file an appropriate adult criminal complaint at or before the time of the next appearance of the child." Minn. R. Juv. Delinq. P. 18.08, subd. 2(A). Second, if the alleged offense was committed in a county other than where adult certification is ordered, "juvenile court jurisdiction terminates in five (5) days or before if the prosecutor files a complaint as provided under Minnesota Rules of Criminal Procedure 2." Minn. R. Juv. Delinq. P. 18.08, subd. 2(B).

Vang's proceedings deviated from the above statutory requirements in several important ways. Before convicting and sentencing Vang as an adult, the juvenile court did not order that the proceeding be certified for action under adult criminal laws and procedures nor did the juvenile court make a statement demonstrating that the juvenile court fully investigated the matter and carefully considered its decision. In fact, the juvenile court made absolutely no comments about adult certification.

Further, the prosecutor did not file an appropriate adult criminal complaint at the November 6, 2001, hearing or at any subsequent appearance because Vang made no further court appearances. As part of Vang's waiver of the certification hearing, Vang stated that he understood that he was going to be treated as an adult "here in court today." [3] In addition, the judge's

---

**3.** While Vang's waiver of certification hearing made the process nonadversarial, his waiver could not and did not terminate the juvenile court's original and exclusive jurisdiction. *See K.A.A.,* 410 N.W.2d at 842. Vang had no power to bestow on the *juvenile court* the authority to convict and sentence Vang as an adult. Nor did Vang's waiver of the certification hearing eliminate the juvenile court's obligation to find that the prosecutor demonstrated by clear and convincing evidence that retaining Vang's proceeding in juvenile court would not serve public safety after fully investigating and considering the matter. *See*

November 7, 2001, written order is captioned "Juvenile Division."[4] While the November 7, 2001, order states that the proceedings are certified to adult court, the record does not contain any subsequent adult court order convicting and sentencing Vang as an adult. Nor does the November 7, 2001, order contain any language suggesting that the judge believed he was sitting as the adult court when he convicted and sentenced Vang as an adult. While there is little doubt that the parties expected that Vang would be convicted and sentenced as an adult, it is equally clear the parties expected that it would be the *juvenile court* that convicted and sentenced Vang as an adult.

As discussed above, a juvenile court lacks the authority to convict or sentence a child as an adult, except under circumstances that are not applicable in Vang's case. *See* Minn.Stat. §§ 260B.198, .245, .255. When a court does not have the authority to hear and determine a particular class of actions and the particular questions that the court assumes to decide, the court lacks subject-matter jurisdiction. *See Robinette v. Price*, 214 Minn. 521, 526, 8 N.W.2d 800, 804 (1943). When the court lacks subject-matter jurisdiction over a proceeding at the time it imposes a sentence, the sentence is void. *See State v. Minton*, 276 Minn. 213, 217, 149 N.W.2d 384, 387 (1967); *State ex rel. Farrington v. Rigg*, 259 Minn. 483, 485, 107 N.W.2d 841, 842 (1961).

Based on the record in Vang's case, we conclude that the judge was sitting as the juvenile court at the time he convicted and sentenced Vang as an adult. Because the judge was sitting as the juvenile court at the time he convicted and sentenced Vang as an adult, Vang's convictions and sentences are void for lack of subject-matter

---

Minn.Stat. § 260B.125, subd. 2(6)(ii); Minn. R. Juv. Delinq. P. 18.06, subds. 1–2.

4. Under Minn. R. Juv. Delinq. P. 18.07, subd. 1, the juvenile court may file its certification order within five days of a juvenile defendant's hearing waiver and stipulation to adult proceedings. But the juvenile court retains subject matter jurisdiction over the proceeding until the order is entered. *See* Minn.Stat. § 260B.125, subd. 7 (2008) ("*When* the juvenile court *enters an order certifying an alleged violation*, the prosecuting authority shall proceed with the case as if the jurisdiction of the juvenile court had never attached.") (emphasis added).

We note that under Minn. R. Juv. Delinq. P. 18.07, subd. 1, when a child waives the right to a certification hearing and stipulates to certification, the juvenile court must file an order containing factual findings as to probable cause, the child's date of birth, and the date of the alleged offenses. The juvenile court's November 7, 2001, order contained the information required by Rule 18.07, subd. 1, but not findings regarding public safety as required under Minn.Stat. § 260B.125, subd. 2(6)(ii). We interpret Rule 18.07, subd. 1, as providing a nonexclusive list of findings. The rule does not supplant but rather augments findings listed in Minn.Stat. § 260B.125, subd. 2(6)(ii). Nothing in court documents or transcripts shows that the prosecutor demonstrated by clear and convincing evidence that retaining Vang's proceeding in juvenile court would not serve public safety. *See* Minn.Stat. § 260B.125, subd. 2(6)(ii); Minn. R. Juv. Delinq. P. 18.06, subds. 1–2. The record contains no indication that the juvenile court considered the seriousness of Vang's offenses, his potential culpability, any prior record of delinquency, Vang's programming history, the adequacy of punishment available, or the dispositional options available for Vang. Minn. R. Juv. Delinq. P. 18.06, subd. 3. Correspondingly, the record does not reveal that the juvenile court considered the seriousness of the offenses and any past delinquency more heavily in determining certification. *See id.*

The postconviction court concluded that the juvenile court was "not required to make findings" because Vang waived his certification hearing. We conclude that this holding misstates the effects that waiving a certification hearing has on the juvenile court's obligation to make findings regarding certification.

jurisdiction.[5] We therefore reverse and remand to the district court.[6]

Concurring, DIETZEN, J. and GILDEA, C.J.

STRAS, J., not having been a member of this court at the time of the argument and submission, took no part in the consideration or decision of this case.

DIETZEN, J. (concurring).

I agree with the result reached by the majority, but I write separately to address my concern over a potential problem created by the opinion. Specifically, a district judge may sometimes act as a district court judge with original jurisdiction over all civil and criminal matters; and other times act as a juvenile court judge with inferior jurisdiction and powers. The potential problem with having a district judge wear different "hats" as a district court and juvenile court judge is that the judge must clarify on the record the capacity upon which the judge acts. The root of the problem originated with the creation of the juvenile court, and therefore I turn to that history.

The Minnesota Constitution provides that the district court "has original jurisdiction in all civil and criminal cases." Minn. Const. art. VI, § 3. It also provides for the office, among others, of district judges. See Minn. Const. art. VI, § 4. But the constitution also provides that the Legislature may create "such other courts, judicial officers and commissioners with jurisdiction inferior to the district court." Minn. Const. art. VI, § 1.

In 1905, the Legislature created a juvenile court, and a separate process for the handling of juvenile matters. See Act of Apr. 19, 1905, ch. 285, 1905 Minn. Laws 418, 418–424. In that Act, the Legislature provided the district court in counties having over 50,000 population with "original and exclusive jurisdiction" in juvenile cases. Id., § 2–3, 1905 Minn. Laws at 419. The juvenile matters were to be handled in a special "juvenile court room" and one or more judges would be designated "to hear all cases arising under this act" for a period of one year, or until otherwise ordered. Id.

In the late 1950s, the chapter governing juvenile matters, although having been significantly modified, retained the language providing "original and exclusive jurisdiction" to the district court in counties with a population of more than 100,000 and requiring the district court to designate certain judges to act as the juvenile court for one-year terms. See Minn.Stat. §§ 260.02–.03 (1957).

Two cases in the late 1950s challenged Minn.Stat. ch. 260 as unconstitutional. In State ex rel. Knutson v. Jackson, 249 Minn. 246, 82 N.W.2d 234 (1957), we addressed the issue of whether chapter 260 was unconstitutional because it deprived the district court of jurisdiction to proceed against a juvenile when the proceedings held by the juvenile court were defective. Similarly, in State ex rel. Pett v. Jackson,

---

5. Because the juvenile court judge was not sitting as the adult court when he convicted and sentenced Vang, we need not and do not consider what effect an invalid certification order may have on the adult court's authority to convict and sentence a child as an adult.

6. Because Vang is now over 21–years–old, we remand to the district court, not the juvenile court. State ex rel. Pett v. Jackson, 252 Minn.

418, 90 N.W.2d 219 (1958) (remanding to district court a first-degree murder case in which the defendant, who was 17–years–old at the time of the offense, was not properly brought before the juvenile court, and thus was entitled to habeas relief, but was no longer within the juvenile court's jurisdiction because the defendant was no longer a child when relief was ordered).

252 Minn. 418, 90 N.W.2d 219 (1958), we were presented with the issue of whether a district court was without jurisdiction to proceed against a juvenile if the case was not first submitted to the juvenile court. We held in both cases that the original and exclusive jurisdiction of the juvenile court did not violate the terms of Minn. Const. art. VI, § 3, which grant the district court original jurisdiction in all civil and criminal cases, because "[t]he procedures required [by the Juvenile Court Act] are those which must be followed *before* criminal jurisdiction comes into being." *Knutson,* 249 Minn. at 250, 82 N.W.2d at 237 (emphasis added); *see also Pett,* 252 Minn. at 421, 90 N.W.2d at 221. Essentially, we held that the Juvenile Court Act did not violate the constitutional grant of jurisdiction to the district court of all civil and criminal matters because juvenile delinquency is not criminal or civil.

Since that time, the classification of juvenile delinquency cases as a matter distinct from any civil or criminal matter has been reinforced. We clarified this distinction in *In re the Welfare of K.A.A.* when we stated "[w]e are unable to agree with any contention that article 6, section 3 of the Minnesota Constitution gives the district court jurisdiction over juveniles" because we concluded that "the legislature had the clear intent to make laws dealing with juvenile delinquency *sui generis.*" 410 N.W.2d 836, 838 n. 4 (Minn.1987). And, in 2006, the Legislature amended Minn.Stat. § 484.01, subd. 1 (2004), to state that the district courts have "original jurisdiction in the following cases: ... the jurisdiction of a juvenile court as provided in chapter 260." Act of July 1, 2006, ch. 260, art. 5, § 16, 2006 Minn. Laws 707, 778

(codified at Minn.Stat. § 484.01, subd. 1 (2008)). This language is particularly relevant in defining the limited power of a district court judge sitting as a juvenile court judge because, unlike the other types of cases listed in section 484.01, subdivision 1, Minn.Stat. § 484.01, subd. 1(5) (2008), limits the district court's jurisdiction in juvenile cases to the "jurisdiction ... as provided in chapter 260."

Although the Legislature has the power to establish separate "judicial officers and commissioners" to exclusively handle juvenile court matters, it has not done so. Consequently, the judiciary uses district court judges to act as juvenile court judges. When a district court judge acts as a juvenile court judge, that judge no longer has authority to act in certain ways— e.g., as a district court judge with the power to impose an adult sentence. While I question whether the Legislature has the power to create a separate case type sui generis,[1] and thereby limit the power of a district court judge when acting as a juvenile court judge, I acknowledge our precedent upholding the Juvenile Court Act as constitutional, and the separate designation of an inferior juvenile court. Thus, when a district court judge is acting as a juvenile court judge, that judge is limited by the jurisdiction of the juvenile court as provided in chapter 260. As the court details in the majority opinion, the imposition of an adult sentence exceeds the authority granted by chapter 260. Instead, the judge may, following specified procedures, transfer the case to district court for the juvenile to be tried as an adult, and only then may a criminal conviction be entered and an adult sentence may be imposed. While those procedures may ap-

---

**1.** My concern is that an order of the juvenile court is appealable to the intermediate court of appeals. *See* Minn. R. Juv. Delinq. P. 21; Minn.Stat. § 260B.415, subd. 2 (2008). Such

a result seems contrary to article VI, section 1 that limits the authority of the Legislature to establish inferior courts.

pear to exalt form over substance, the jurisdiction of a judge who fails to follow those procedures is limited to the jurisdiction provided in chapter 260. Therefore, I concur that Vang's conviction and sentence must be reversed and the case must be remanded for further proceedings.

GILDEA, Chief Justice (concurring).

I join in the concurrence of Justice Dietzen.