*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-1400**

Somlith Vongphasouk, petitioner,
Appellant,

vs.

State of Minnesota,
Respondent.

**Filed June 22, 2015
Affirmed
Chutich, Judge**

Hennepin County District Court
File No. 27-CR-99-011779

Deborah K. Ellis, St. Paul, Minnesota (for appellant)

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Michael O. Freeman, Hennepin County Attorney, Michael Richardson, Assistant County Attorney, Minneapolis, Minnesota (for respondent)

Considered and decided by Chutich, Presiding Judge; Connolly, Judge; and Kirk, Judge.

## UNPUBLISHED OPINION

**CHUTICH**, Judge

Petitioner-appellant Somlith Vongphasouk challenges the denial of postconviction relief, arguing that his petition was timely and that the district court has inherent authority

to modify an expired sentence. Because Vongphasouk did not file his petition within two years of the accrual of his claim, we affirm.

## FACTS

Somlith Vongphasouk was born in Laos in 1977. His family fled Laos in 1986 because of the political climate and spent one year in Thailand and six months in the Philippines as refugees. The family arrived in California in 1988 and moved to Minnesota three months later. In September 1989, Vongphasouk obtained lawful permanent resident status.

In 1999, when he was twenty-two years old, Vongphasouk was charged with felony aiding and abetting offering a forged check. His attorney negotiated a plea agreement that he believed would not jeopardize Vongphasouk's immigration status. Because the attorney was unaware that this negotiated sentence and conviction would make Vongphasouk ineligible to enter the United States, the attorney advised Vongphasouk to accept the offer. Vongphasouk accepted the offer and pleaded guilty to gross misdemeanor offering a forged check. The district court sentenced him to the recommended sentence of 365 days in jail with 275 days stayed and the remaining 90 days divided between jail and community service work. Vongphasouk was not advised that pleading guilty could affect his immigration status, and the guilty plea petition lacked an immigration warning.

Since that time, Vongphasouk has not only remained offense-free but also has become, as the postconviction court noted, "a valuable, productive member of this community." In 2006 and 2007, Vongphasouk visited Laos and was allowed to reenter

the United States. In 2010, while returning from a third trip to Laos, United States Customs and Border Protection detained Vongphasouk and charged him with being an inadmissible alien. Vongphasouk faces removal proceedings that could result in deportation. *See* 8 U.S.C. § 1227(a)(2)(A)(i) (2012) (stating that aliens convicted of crimes involving moral turpitude and sentenced to one year or longer are deportable). In 2011, Vongphasouk filed a petition for postconviction relief; after an evidentiary hearing, the postconviction court denied relief.

In January 2014, Vongphasouk filed a motion to correct his sentence under Minnesota Rule of Criminal Procedure 27.03, subdivision 9, asking the district court to reduce his sentence by one day. At the hearing in April 2014, Vongphasouk argued that the district court could consider his motion as a petition for postconviction relief. The state opposed reducing Vongphasouk's sentence.

In June 2014, the district court denied relief. In denying the motion to correct the sentence, the district court noted that rule 27.03, subdivision 9, only permits the court to correct a sentence not authorized by law. The district court explained that because Vongphasouk's sentence was not unauthorized or contrary to law, it could not grant relief on this basis.

The district court then discussed the timeliness of Vongphasouk's motion if construed as a postconviction petition, noting that he filed for relief beyond the two-year time bar set forth in Minnesota Statutes section 590.01, subdivision 4(a) (2014). The district court concluded that the petition met the interests-of-justice exception listed under subdivision 4(b)(5) (2014), and therefore it was not time barred under subdivision 4(a).

3

Specifically, the district court concluded that the interests of justice warranted considering the petition because of the federal government's failure to apply the law during Vongphasouk's 2006 and 2007 trips to Laos. And it stated that applying the interests-of-justice exception would not affect the finality of his conviction.

Despite meeting the interests-of-justice exception, the district court still considered the petition untimely. It reasoned that Vongphasouk knew or should have known of his claim in October 2010, when Customs and Border Protection first detained him. But he did not file this petition until January 2014. Because Minnesota Statutes section 590.01, subdivision 4(c) (2014) requires a petition to be filed within two years of the accrual of the interests-of-justice claim, the district court considered the petition untimely.

The district court nevertheless discussed the merits of Vongphasouk's petition but reluctantly found that relief was not warranted. It concluded that while adjusting the sentence by one day was "modest, sensible, and harmless," it had no legal basis to modify the sentence. Vongphasouk appealed.

## D E C I S I O N

On appeal, Vongphasouk argues that the district court erred by dismissing his petition as untimely and by concluding that it lacked the inherent authority to modify the sentence. We affirm the denial of postconviction relief because the petition was untimely.

Minnesota Statutes section 590.01, subdivision 4(a), requires a petition for postconviction relief to be filed not more than two years after "the entry of judgment of conviction or sentence if no direct appeal is filed." But a petition may be filed after this

4

two-year time limit if "the petitioner establishes to the satisfaction of the court that the petition is not frivolous and is in the interests of justice." *Id.*, subd. 4(b)(5). A petition brought under the interests-of-justice exception must be filed within two years of the date that the claim arises. *Id.*, subd. 4(c).

The district court here concluded that Vongphasouk met the requirements of the interests-of-justice exception but that his petition was still untimely. It determined that the triggering event was Vongphasouk's 2010 detention, and therefore his petition was untimely because he did not file it until 2014. Vongphasouk does not argue that this conclusion is incorrect. Instead, he urges this court to use its inherent authority to waive the time bar in the interests of justice. Vongphasouk relies on *Vang v. State*, 788 N.W.2d 111 (Minn. 2010), to support this argument.

In *Vang*, the state filed a delinquency petition alleging that the 14-year-old Vang committed first-degree murder, second-degree murder, and attempted first-degree murder. *Id.* at 113. The state filed a motion to certify Vang as an adult. *Id.* Vang then appeared in juvenile court, and the parties informed the court that they had negotiated a resolution. *Id.* Vang did not stipulate to any of the factors required to certify him as an adult, and the juvenile court made no findings or ruling on the adult certification issue. *Id.* The juvenile court accepted Vang's guilty pleas to first-degree murder and attempted first-degree murder, and it sentenced him to adult sentences for the convictions. *Id.*

Following these convictions, Vang wrote to the State Public Defender's Office five times between 2001 and 2005, requesting that it represent him in appealing the convictions. *Id.* at 113-14. The Public Defender's Office continuously replied that it

could not help him. *Id.* at 114. After Vang's sixth request in 2008, the Public Defender's Office assigned counsel in 2009. *Id.* Vang's postconviction petition was denied. *Id.*

Upon review, the supreme court rejected the state's argument that Vang's petition was barred by the two-year time limit for postconviction relief. *Id.* It noted that it has interpreted Minnesota Constitution article VI, section 2, as granting it "constitutionally independent authority to review determinations by the other state courts," and that it has "invoked this inherent authority to hear an appeal." *Id.* (quotation omitted). The supreme court concluded that Vang's case was a rare and exceptional case both procedurally and substantively: procedurally because of Vang's multiple requests for representation by the Public Defender's Office; substantively because it involved nonwaivable subject-matter jurisdiction claims. *Id.* at 114-15. It then proceeded to review Vang's claims. *Id.* at 115. Notably, the supreme court stated that because its review was "akin to a direct appeal," it would not decide the statute of limitations issue. *Id.*

Vongphasouk's reliance on *Vang* is unavailing. Since its release, the supreme court has been reluctant to invoke its inherent authority, noting the rare and exceptional procedural and substantive circumstances present in *Vang*. *See Sanchez v. State*, 816 N.W.2d 550, 566-67 (Minn. 2012); *Carlton v. State*, 816 N.W.2d 590, 615 n.14 (Minn. 2012). While Vongphasouk relies on *Vang*, he does not articulate how his situation proves to be so rare and exceptional as to require the invocation of this court's inherent authority.

We conclude that Vongphasouk's case is more similar to *Sanchez v. State* than to *Vang*. In *Sanchez*, a petition for postconviction relief was brought under the interests-of-justice exception but was considered untimely under section 590.01, subdivision 4(c). 816 N.W.2d at 560. Relying on *Vang*, Sanchez urged the supreme court to consider his claim under its inherent authority. *Id.* at 566. But the supreme court declined to do so. *Id.* at 567. It noted that unlike *Vang*, Sanchez was "not persistently trying to seek review of his conviction," distinguishing the case from the exceptional procedural circumstances in *Vang*. *Id.* And the supreme court also distinguished the substantive circumstances of the case, noting that unlike the nonwaivable jurisdictional argument in *Vang*, "the errors that Sanchez seeks to have reviewed, [including] the constitutional right to have effective assistance of counsel . . . are rights that are subject to waiver." *Id.*

We conclude that this reasoning applies here. Like *Sanchez*—and unlike *Vang*—no evidence suggests that Vongphasouk persistently sought review of his conviction but was denied representation. While his delay may have been excusable given that the current issue did not arise until 2010, he sought postconviction relief twice, and a court considered his petitions each time. This procedural history is not as "rare and exceptional" as that in *Vang*.

Vongphasouk argues that his petition should be considered because his "[t]rial counsel's and 2011 postconviction counsel's failures provide cause for a review on the merits." But the *Sanchez* court rejected a similar argument, stating that because the right to effective assistance of counsel is waivable, it does not reach the substantive level of "rare and exceptional" that was required for review in *Vang*. *Id.* at 567. Because

7

Vongphasouk's case does not meet the narrow standard set by the supreme court for a "rare and exceptional" case either procedurally or substantively, we conclude that the district court did not err by denying the petition as untimely.

Although we affirm the district court's decision in this case, we agree that, if more discretionary standards were applicable, "reducing an already-served sentence by one day . . . to prevent [Vongphasouk's] removal to a potentially hostile country is a modest, sensible, and harmless request." At oral argument, counsel for the state suggested that even if it agreed to this minor sentencing modification, the original conviction may still count for deportation purposes under federal law. That may well be true, but deportation under these circumstances is troubling. Vongphasouk has remained law-abiding for 16 years; his only offense was aiding and abetting a gross misdemeanor check forgery offense when he was twenty-two years old. Deporting a "valuable, productive member of the community" to a country where he does not speak the native language and from which his family fled political persecution almost 30 years ago when he was just a boy seems unduly harsh.

**Affirmed.**