STATE of Minnesota, Respondent,

v.

Mahdi Hassan ALI, Appellant.

No. A10–1737.

Supreme Court of Minnesota.

Oct. 12, 2011.

**46**

Lori Swanson, Attorney General, St. Paul, MN; and Michael O. Freeman, Hennepin County Attorney, Michael Richardson, Assistant County Attorney, Minneapolis, MN, for respondent.

Frederick J. Goetz, Goetz & Eckland, P.A., Minneapolis, MN, for appellant.

OPINION

PAGE, Justice.

Two questions are presented in this appeal: (1) whether the denial of a defendant's motion to dismiss an indictment for murder for lack of subject matter jurisdiction is immediately appealable as of right; and (2) the appropriate evidentiary standard to be applied to the question of a defendant's age on the date of the alleged offense. We conclude that the denial of a defendant's motion to dismiss an indictment for lack of subject matter jurisdiction is immediately appealable as of right. We further conclude that the State bears the burden of proving the defendant's age by a preponderance of the evidence.

This case arises out of the shooting deaths of three individuals at the Seward Market in Minneapolis on January 6, 2010. On February 4, 2010, appellant Mahdi Hassan Ali was indicted on three counts of murder in the first degree in violation of Minn.Stat. § 609.185(a)(1) (2010) (premeditated murder) and three counts of murder in the first degree in violation of Minn. Stat. § 609.185(a)(3) (2010) (murder committed in the course of a felony) in connection with the deaths. The indictment alleges that Ali was born on January 1, 1993, which would make him 17 years old on the date of the alleged offense and therefore automatically subject to trial in the district court under Minn.Stat. §§ 260B.101, subd. 2, and 260B.007, subd. 6(b) (2010).

Ali moved to dismiss the indictment for lack of subject matter jurisdiction[1] based on his contention that he was only 15 years old on the date of the alleged offenses and that the jurisdiction of the juvenile court under Minn.Stat. § 260B.101, subd. 1 (2010), is therefore exclusive.

---

1. Specifically, Ali's motion sought to dismiss the indictment for lack of jurisdiction. We read Ali's motion as a motion to dismiss for lack of subject matter jurisdiction.

The district court issued an order providing:

1. The initial burden of proving [Ali]'s age falls on the State. The State must make a prima facie showing that [Ali] was 16 years of age or older at the time of the alleged incident.

2. To meet the State's prima facie showing that [Ali] was over 16 years of age at the time of the alleged incident, [Ali] must come forth with evidence that [Ali] was not over 16 years of age at the time of the alleged incident. If [Ali] comes forward with such evidence, the State will have an opportunity to rebut with any additional evidence. After receiving all evidence the Court must determine from the preponderance of the evidence whether [Ali] was over 16 years of age at the time of the offense.

*State v. Ali*, No. 27–CR–10–2076, Order at 2–3 (Henn. Cnty. Dist. Ct. filed July 6, 2010). After an evidentiary hearing, the district court denied Ali's motion to dismiss the indictment, concluding that "[t]he evidence establishes by a clear preponderance that [Ali] had reached his sixteenth birthday before January 6, 2010." *State v. Ali*, No. 27–CR–10–2076, Order at 10–11, 2010 WL 7810583 (Henn. Cnty. Dist. Ct. filed Sept. 13, 2010).

Ali filed a timely notice of appeal. The court of appeals concluded that the district court's September 13 order denying Ali's motion to dismiss the indictment was not appealable because the order was neither a final judgment nor one of the types of orders from which a pretrial appeal is expressly authorized by Minn. R.Crim. P. 28.02, subd. 2. *State v. Ali*, No. A10–1737, Order at 3 (Minn.App. filed Nov. 4, 2010). The court also noted that our court has not applied the collateral order doctrine, under which certain orders are immediately appealable notwithstanding the absence of a final judgment on the merits, to criminal appeals. *Id.; see Kastner v. Star Trails Ass'n*, 646 N.W.2d 235, 240 (Minn.2002) (adopting the collateral order doctrine in civil cases).

We reversed the decision of the court of appeals and exercised our authority to accelerate review under Minn. R. Civ.App. P. 118 to consider the merits of the appeal without remand for a decision by the court of appeals. *State v. Ali*, No. A10–1737, Order at 2 (Minn. filed Apr. 27, 2011). After additional briefing and oral argument, we issued an order affirming the district court's July 6 order establishing the standard of proof on the jurisdictional question of age as well as the district court's September 13 order denying Ali's motion to dismiss the indictment. *State v. Ali*, No. A10–1737, Order at 2 (Minn. filed June 8, 2011). We now address the issues decided in our earlier orders that were issued with opinion to follow so that the trial could proceed without further delay.

## I.

■ We first address the appealability of the district court's order denying Ali's motion to dismiss the indictment against him. Minnesota Rule of Criminal Procedure 28.02, subdivision 2(2), sets forth a list of orders from which a criminal defendant may immediately appeal as of right:

A defendant cannot appeal until the district court enters an adverse final judgment, but may appeal:

(a) from an order refusing or imposing conditions of release; or

(b) in felony and gross misdemeanor cases from an order:

1. granting a new trial, and the defendant claims that the district court should have entered a final judgment in the defendant's favor;

2. not on the defendant's motion, finding the defendant incompetent to stand trial; or

3. denying a motion to dismiss a complaint following a mistrial, and the defendant claims retrial would violate double jeopardy.

Ali concedes that the district court's order denying his motion to dismiss the indictment does not fall within the orders listed in Minn. R.Crim. P. 28.02, subd. 2(2), but argues that the order is nonetheless immediately appealable. We agree.

We have long recognized that, in the civil context, an order denying a motion to dismiss for lack of jurisdiction is immediately appealable as of right. In *Hunt v. Nevada State Bank*, we held that an order denying a motion to dismiss for lack of personal jurisdiction is appealable as of right. 285 Minn. 77, 88, 172 N.W.2d 292, 300 (1969). In so holding, we stated that "[i]t is more realistic to view such an order not merely as a retention of an action for trial, but as a determination of right, for a defendant is compelled thereby to take up the burden of litigation in this state that might otherwise be avoided." *Id.* at 89, 172 N.W.2d at 300.

In *Anderson v. City of Hopkins*, 393 N.W.2d 363, 363 (Minn.1986), we considered whether an order denying a summary judgment motion based on qualified immunity from suit under 42 U.S.C. § 1983 (2006) was appealable as of right. We recognized that the Supreme Court has held such an order is appealable under 28 U.S.C. § 1291 (2006) because it falls within that small class of orders that finally determines claims of right "separable from, and collateral to, rights asserted in the action, too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated." *Anderson*, 393 N.W.2d at 363 (quoting

*Mitchell v. Forsyth*, 472 U.S. 511, 524–25, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985) (internal quotation marks omitted)). Relying on the reasoning in *Mitchell*, we concluded that the district court's order in *Anderson* was appealable because, with respect to qualified immunity, the issue is independent of the merits of the action—"immunity is an *immunity from suit* rather than a mere defense"—and too important to be denied review because "the immunity is effectively lost if a case is erroneously permitted to go to trial." *See id.* at 364 (citing *Mitchell*, 472 U.S. at 525–30, 105 S.Ct. 2806).

Most recently, we considered the appealability of a district court order that denied a church's motion for summary judgment in a negligence action brought by an employee. *McGowan v. Our Savior's Lutheran Church*, 527 N.W.2d 830, 831 (Minn. 1995). The church sought dismissal of the action based on its contention that the district court lacked subject matter jurisdiction under the exclusivity provision of the Workers' Compensation Act. *Id.; see* Minn.Stat. § 175A.01, subd. 5 (2010) (establishing the Workers' Compensation Court of Appeals as "the sole, exclusive, and final authority for the hearing and determination of all questions of law and fact arising under the workers' compensation laws of the state" in all cases appealed or transferred to that court). We acknowledged that "[g]enerally, an order denying a motion for summary judgment is not appealable unless the district court certifies the question presented as important and doubtful," and that in *McGowan*, the district court had not certified the question presented. 527 N.W.2d at 832 (citing Minn. R. Civ.App. P. 103.03).

But we also acknowledged the exceptions to the general rule when a motion for summary judgment or to dismiss is based on governmental immunity or lack of per-

sonal jurisdiction. *Id.* Based on the rationale from *Anderson* and *Hunt,* we held in *McGowan* that an order denying a motion based on the subject matter jurisdiction of the district court is immediately appealable. *Id.* at 833. Like the determination of governmental immunity or personal jurisdiction, we recognized that "[i]f the district court here lacks jurisdiction over the subject matter, no purpose is served by putting the parties or the court through the rigors of trial before that determination is made." *Id.; see id.* at 832 ("Government officials entitled to immunity should not be forced to endure the expense and delay of proceeding to trial.").

■ We conclude that the district court's order in this case denying Ali's motion to dismiss the indictment for lack of subject matter jurisdiction is immediately appealable as of right for the same reasons. If the court were to conclude that Ali was only 15 years old on the date of the alleged offense, the court would be without jurisdiction to proceed further. If the court lacks subject matter jurisdiction, "no purpose is served by putting the parties or the court through the rigors of trial before that determination is made." *See id.* at 833.

In addition, the court of appeals held the district court's order was nonappealable based in part on the fact that, unlike the Minnesota Rules of Civil Appellate Procedure, the Minnesota Rules of Criminal Procedure do not contain a "catch-all" provision that permits appeals from orders other than those specifically listed. *See* Minn. R. Civ.App. P. 103.03(j) (stating that an appeal may be taken "from such other orders or decisions as may be appealable by statute or under the decisions of the Minnesota appellate courts"). We con-

clude that the absence of a "catch-all" provision in the Minnesota Rules of Criminal Procedure does not bar the appealability of the district court's order in this case. It is significant that we held the orders at issue in *Hunt, Anderson,* and *McGowan* were immediately appealable even though, at the time each of those cases were decided, the Rules of Civil Appellate Procedure did not include a "catch-all" provision. *See* Order Promulgating Amendments to Rules of Civil Appellate Procedure, No. C4–84–2133, at 1, 4 (Minn. July 7, 1998).[2] Indeed, we have stated that the right to appeal from orders such as those denying motions to dismiss for lack of personal jurisdiction, lack of subject matter jurisdiction, and governmental immunity "is derived not from procedural rules, but from fundamental principles relating to the finality of judgments." *Kastner v. Star Trails Ass'n,* 646 N.W.2d 235, 238 (Minn.2002). The principles relating to the finality of judgments apply no less to criminal cases than to civil cases.

The district court's order denying Ali's motion to dismiss the indictment falls within "that small class [of orders] which finally determine claims of right separable from, and collateral to, rights asserted in the action, too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated." *See Mitchell,* 472 U.S. at 524–25, 105 S.Ct. 2806 (quoting *Cohen v. Beneficial Indust. Loan Corp.,* 337 U.S. 541, 546, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949)) (internal quotation marks omitted). Establishing Ali's age on the date of the alleged offense for purposes of determining the jurisdiction of the district (as opposed to the juvenile) court "finally deter-

---

**2.** This order is available at http://www.mncourts.gov/Docuents/0/Public/administration/AdministrationFiles/Civil Appellate Procedure ADM09–8006 (formerly C4–84–2133)/1998–07–07 Order Amending Civ App Proc Rls.pdf.

mine[s][a] claim[ ] of right"—namely, Ali's right to be tried in juvenile court—"separable from, and collateral to, rights asserted in the action"—namely, Ali's guilt or innocence. *Id.* The question of the jurisdiction of the district court is also independent of the merits of the action because Ali's age is not an element of any of the charges for which he is indicted. *See* Minn.Stat. § 609.185(a)(1) (premeditated murder); Minn.Stat. § 609.185(a)(3) (murder committed in the course of a felony). Finally, the issue is too important to be denied immediate review because of the protections of the juvenile court—such as confidentiality of the proceedings and records—that are lost once the case is tried in district court. *See* Minn.Stat. § 260B.163, subd. 1(c) (2010) (closing proceedings in juvenile court to the general public); Minn.Stat. § 260B.171, subd. 4(b) (2010) (closing the records of the juvenile court to the general public).

For these reasons, we hold that the district court's order denying Ali's motion to dismiss the indictment is immediately appealable as of right and we reverse the court of appeals on this point. But we decline Ali's invitation to extend the collateral order doctrine to all pretrial criminal appeals.[3] The unusual facts of this matter—the competing jurisdictions of the district and juvenile courts, coupled with the uncertainty over Ali's age—persuade us that the immediate appealability of pretrial orders in criminal cases is better addressed on a case-by-case basis, applying the rationale for the collateral order doctrine.

## II.

We turn now to the standard of proof to be applied to the question of a defendant's age. Generally, "[t]he juvenile court has original and exclusive jurisdiction in proceedings concerning children alleged to be delinquent prior to having become 18 years of age." *Vang v. State*, 788 N.W.2d 111, 115 (Minn.2010); *see* Minn.Stat. § 260B.101, subd. 1. But the district court has "original and exclusive jurisdiction" over a juvenile who is alleged to have committed first-degree murder after reaching his or her sixteenth birthday. Minn.Stat. § 260B.101, subd. 2 (providing that the juvenile court lacks jurisdiction over proceedings concerning a child excluded from the definition of "delinquent child" under Minn.Stat. § 260B.007, subd. 6(b) (2010)); Minn.Stat. § 260B.007, subd. 6(b) (providing that the term delinquent child does not include a child alleged to have committed first-degree murder after becoming 16 years of age).[4]

In this case, the indictment alleged that Ali was born on January 1, 1993, which would make him 17 years old at the time of the alleged offense and automatically subject to district court jurisdiction. Ali asserts that he was born on August 25,

3. Ali argues that we effectively extended the collateral order doctrine to all criminal cases in a footnote in *State v. Dahlin*, 753 N.W.2d 300 (Minn.2008). In *Dahlin*, we noted in dicta that interlocutory appeals are permitted in certain situations, including under the collateral order doctrine. *Id.* at 303 n. 5. But nothing in *Dahlin* extended the collateral order doctrine to criminal cases. Indeed, our mention of the collateral order doctrine came in the context of the observation that Dahlin had not sought interlocutory review of the very order from which he later appealed. *Id.* at 302.

4. The juvenile court may enter an order certifying the proceeding to district court if a criminal defendant, after becoming 14 years of age, is alleged to have committed an offense that would be a felony if committed by an adult. Minn.Stat. § 260B.125, subd. 1 (2010). Certification of a juvenile pursuant to Minn.Stat. § 260B.125, subd. 1, must comply with the requirements of Minn.Stat. § 260B.125, subd. 2 (2010).

1994, and therefore was 15 years old at the time of the alleged offense. The district court concluded that the State was required to prove Ali's age by a preponderance of the evidence. Ali argues, however, that the State should be required to prove his age beyond a reasonable doubt. Therefore, at issue is the applicable standard of proof when the defendant's age determines whether the district court or juvenile court has jurisdiction. We review issues of subject matter jurisdiction de novo. *Burkstrand v. Burkstrand,* 632 N.W.2d 206, 209 (Minn.2001).

The United States Supreme Court has observed that the standard of proof serves three purposes: to "instruct the factfinder concerning the degree of confidence our society thinks he should have in the correctness of factual conclusions for a particular type of adjudication," "to allocate the risk of error between the litigants," and "to indicate the relative importance attached to the ultimate decision." *Addington v. Texas,* 441 U.S. 418, 423, 99 S.Ct. 1804, 60 L.Ed.2d 323 (1979) (citation omitted) (internal quotation marks omitted). When society has "a minimal concern with the outcome" of the lawsuit—for example, a monetary dispute between private parties—the appropriate standard of proof is preponderance of the evidence, which imposes the risk of error on the parties in roughly equal amounts. *Id.* On the other hand, when "the interests of the defendant"—such as in guilt or innocence—"are of such magnitude that ... they have been protected by standards of proof designed to exclude as nearly as possible the likelihood of an erroneous judgment," the State must prove its case beyond a reasonable doubt. *Id.* at 423–24, 99 S.Ct. 1804. When the interests at stake "are deemed to be more substantial than mere loss of money" or are deemed "particularly important," an intermediate standard such as

"clear" or "convincing" evidence is used. *Id.* at 424, 99 S.Ct. 1804.

In determining the appropriate standard to apply to the question of a defendant's age, we must therefore assess the relative interests of the defendant and the State, "mindful that the function of legal process is to minimize the risk of erroneous decisions." *Id.* at 425, 99 S.Ct. 1804. More specifically, we must address the interests of the State and the defendant relative to the risks of error.

Neither Ali nor the State contend, nor could they, that the particular court in which Ali is tried affects in any way the likelihood of a particular verdict. Put another way, whether Ali is tried in juvenile court or in district court in no way affects the likelihood that he will be found either guilty or not guilty of the crimes for which he has been indicted.

■ The risk of error we evaluate, therefore, is not the risk of error as to the verdict, but rather the risk that a defendant who was under the age of 16 on the date of the alleged offense is wrongly tried in district court, as opposed to the risk that a defendant who was age 16 or older on the date of the alleged offense is wrongly tried in juvenile court. On one hand, juvenile court affords certain procedural protections—such as privacy of the proceedings and records, *see* Minn.Stat. §§ 260B.163, subd. 1(c), 260B.171, subd. 4(b)—not available in district court. It is therefore possible that if a defendant who was in fact age 16 or older at the time of the alleged offense was erroneously tried in juvenile court, the public could be deprived of information about the proceedings to which it would otherwise be entitled. At the same time, it is possible that if a defendant who was in fact under the age of 16 on the date of the offense was erroneously tried in district court, the defendant would be deprived of the benefit of

confidential proceedings. However, the right to confidentiality in juvenile court proceedings, like the right to proceedings in juvenile court itself, is not a constitutional right. *See Davis v. Alaska,* 415 U.S. 308, 320, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974) (describing the confidentiality of a juvenile offender's record as a state "policy interest" that must yield to the constitutional right to cross-examine an adverse witness); *In re K.A.A.,* 410 N.W.2d 836, 842 (Minn.1987) ("Nothing in either the federal or state constitutions afford juveniles any constitutional right to have their antisocial problems addressed within the jurisdiction of the juvenile court.").

■ On the other hand, a district court affords certain procedural advantages, most notably the right to a jury trial, not available in juvenile court. *See* Minn.Stat. § 260B.163, subd. 1(a) (providing that, with certain exceptions not applicable here, "hearings on any matter [in juvenile court] shall be without a jury"). It is possible, therefore, that a defendant who is age 16 or older on the date of the alleged offense could be erroneously deprived of the right to a jury trial if he or she is tried in juvenile court. Although the right to a jury trial in a criminal case venued in district court is a constitutional right, it can be waived. *See* Minn. Const. art. I, § 4 ("A jury trial may be waived by the parties in all cases in the manner prescribed by law.").

In the absence of a suggestion, much less evidence, that trying a juvenile defendant in the wrong court also involves a risk of an erroneous verdict or the erroneous deprivation of a constitutional right, we conclude that such risk should be borne equally between the State and the defendant.

Ali contends that we must adopt a beyond-a-reasonable-doubt standard to comply with the Supreme Court's requirement that the beyond-a-reasonable-doubt standard apply to criminal prosecutions against juveniles. *See In re Winship,* 397 U.S. 358, 368, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970) (holding that juveniles are constitutionally entitled to proof beyond a reasonable doubt when charged with a violation of criminal law). In essence, Ali argues that establishing his age is an element of the offenses of which he has been charged. *See State v. Neguse,* 71 Ohio App.3d 596, 594 N.E.2d 1116, 1120 (1991) ("In criminal cases in common pleas court, the court's jurisdiction must be proved beyond a reasonable doubt as an element of the offense because the validity of any judgment depends upon the court having obtained jurisdiction."). Ali points out that the majority of decisions from other jurisdictions have concluded that the facts determining territorial jurisdiction must be proven using the beyond-a-reasonable-doubt standard, and that the Model Penal Code requires "such attendant circumstances" in a criminal case such as "jurisdiction or venue" to be proven beyond a reasonable doubt. Ali contends that jurisdiction is "no less indispensable to a conviction than is a fact establishing venue," and that because the court of appeals has required that venue be proven by the prosecution beyond a reasonable doubt, *State v. Pierce,* 792 N.W.2d 83, 85 (Minn.App.2010), we should apply the beyond-a-reasonable-doubt standard to jurisdiction as well.

We disagree. A defendant's age is not an element of either first-degree premeditated murder or first-degree felony murder, the two charges for which Ali was indicted. *See* Minn.Stat. §§ 609.185(a)(1), (a)(3). Rather, the question of age determines only whether the juvenile or district court has jurisdiction over the proceedings. *See* Minn.Stat. § 260B.101, subd. 2. This is a separate issue from that of guilt or innocence, and nothing in Minnesota Statutes

or our case law requires that either the question of age or the issue of jurisdiction of the trial court be proven beyond a reasonable doubt. *Cf. State v. Smith,* 421 N.W.2d 315, 321 n. 3 (Minn.1988) (noting that the issue of whether territorial jurisdiction is an element of the offense and what the state's burden of proof would be on that issue is unresolved under Minnesota law).

Ali further asserts that the beyond-a-reasonable-doubt standard should apply here because the difference between a trial in juvenile court and a trial in district court is the difference between imprisonment for life (the penalty under Minn.Stat. § 609.185 (2010) for first-degree murder) and detention to age 19 or 21 (the age at which he would no longer be subject to the jurisdiction of the juvenile court under Minn.Stat. § 260B.193, subd. 5(a), (b) (2010)). Both the Supreme Court and our court have held that facts that increase the maximum possible punishment must be proven beyond a reasonable doubt. *See Apprendi v. New Jersey,* 530 U.S. 466, 490, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000) (holding that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt"); *Blakely v. Washington,* 542 U.S. 296, 303, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004) (holding that the "statutory maximum" for purposes of *Apprendi* is "the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant" (emphasis omitted)); *State v. Shattuck,* 689 N.W.2d 785, 786 (Minn. 2004) (applying *Apprendi* and *Blakely* to hold that the district court's imposition of an upward durational departure sentence violated appellant's Sixth Amendment right to trial by jury). This argument fails for two reasons. First, the link between the defendant's age at the time of the alleged offense and the maximum possible punishment if convicted is too attenuated to implicate *Apprendi* and *Blakely.* As explained above, establishing the defendant's age determines whether jurisdiction lies in the district or juvenile court. Once jurisdiction is established, the defendant will be sentenced only if the State can prove the elements of the crime beyond a reasonable doubt. In determining the jurisdiction of the juvenile court, we must presume the defendant's innocence.

■ Second, *Apprendi* and *Blakely* are premised on the Sixth Amendment's guarantee of the right to an impartial jury in criminal prosecutions. *Apprendi,* 530 U.S. at 476–77, 120 S.Ct. 2348; *Blakely,* 542 U.S. at 305–06, 124 S.Ct. 2531. There is no constitutional right to a jury trial in juvenile court because a juvenile court proceeding is not a "criminal prosecution" within the meaning and reach of the Sixth Amendment right to an impartial jury. *See McKeiver v. Pennsylvania,* 403 U.S. 528, 541, 91 S.Ct. 1976, 29 L.Ed.2d 647 (1971); *see also State v. McFee,* 721 N.W.2d 607, 612 n. 7 (Minn.2006) ("This court has impliedly indicated its agreement with *McKeiver*'s holding." (citing *K.A.A.,* 410 N.W.2d at 841 n. 9)).

Ali also argues that applying the beyond-a-reasonable-doubt standard is necessary to satisfy constitutional due process standards. Ali cites *Mathews v. Eldridge,* in which the Supreme Court identified three factors that should be considered in determining whether the "specific dictates of due process" are satisfied:

First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interests through the procedures used, and the probable value, if any, of additional or substitute procedural safe-

guards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

424 U.S. 319, 335, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). Both the Supreme Court and our court have used the *Eldridge* factors to determine whether the standard of proof applied to a proceeding satisfies due process. *See Santosky v. Kramer,* 455 U.S. 745, 754, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982) ("[T]he Court has engaged in a straightforward consideration of the factors identified in *Eldridge* to determine whether a particular standard of proof in a particular proceeding satisfies due process."); *Carrillo v. Fabian,* 701 N.W.2d 763, 776–77 (Minn.2005) (applying the *Eldridge* factors to conclude that the "preponderance of the evidence" standard of proof did not satisfy procedural due process requirements when applied to a prison disciplinary proceeding that extended a prisoner's release date).

Again, we disagree. As discussed above, because the criminal defendant and the State have an equal interest in trying the defendant in the proper court, preponderance of the evidence is the proper standard of proof in determining the defendant's age for jurisdictional purposes. It is also significant that, although a defendant's age may be rarely open to debate, when it is, it is the defendant who has direct knowledge and control over the information necessary to resolve the dispute. Requiring additional procedural safeguards puts an even greater burden on the State in a situation in which it is already at a disadvantage. Indeed, it is questionable in situations in which the defendant's country of origin does not maintain birth records whether, in a case in which a defendant's age is open to question, the State could ever meet a standard higher than preponderance of the evidence.

Finally, Ali argues that we should not follow federal cases deciding the issue of the standard of proof to apply to the jurisdictional question of age because none of those cases analyze whether the preponderance-of-the-evidence standard satisfies due process and because the federal approach to juvenile delinquency proceedings is "materially different" from that followed in Minnesota. We come to the same conclusion as several federal decisions considering the issue. *See, e.g., United States v. Alvarez–Porras,* 643 F.2d 54, 66–67 (2d Cir.1981) (holding that the government has the obligation to prove that the defendant is an adult and the government "had met any burden it bore" to prove that the defendant was over the age of 18); *United States v. Salgado–Ocampo,* 50 F.Supp.2d 908, 909 (D.Minn.1999) (applying a preponderance-of-the-evidence standard to the question of the defendant's age). But we have not relied on them.

■ We conclude that when the age of the defendant determines the jurisdiction of the court, the State has the burden of proving, by a preponderance of the evidence, the defendant's age on the date of the alleged offense.

Reversed in part, affirmed in part, and remanded.

STRAS, Justice (concurring).

I join Part II of the court's opinion. I write separately, however, because I disagree with the court's partial adoption of the collateral order doctrine in Part I. With respect to Part I, therefore, I concur only in the result.

This court does not have unlimited jurisdiction to decide all cases and controversies. To the contrary, the Minnesota Constitution, statutes, and procedural rules limit the scope of appellate jurisdiction.

Yet, instead of deciding this case on the basis of the Minnesota Constitution, a statute, or a rule of procedure, the court rests jurisdiction over this case on "[t]he unusual facts of this matter." As a result, the court declines to apply the collateral order doctrine to all interlocutory orders in criminal matters because, in its view, "the immediate appealability of pretrial orders in criminal cases is better addressed on a case-by-case basis, applying the rationale for the collateral order doctrine." I disagree with the court's ad hoc approach for two reasons.

First, the Supreme Court of the United States has recognized that a case-by-case approach to the collateral order doctrine is unworkable because it fails to provide sufficient guidance to courts and litigants. *See Cunningham v. Hamilton Cnty., Ohio,* 527 U.S. 198, 206, 119 S.Ct. 1915, 144 L.Ed.2d 184 (1999) ("[W]e have consistently eschewed a case-by-case approach to deciding whether an order is sufficiently collateral."); *Digital Equip. Corp. v. Desktop Direct, Inc.,* 511 U.S. 863, 866, 114 S.Ct. 1992, 128 L.Ed.2d 842 (1994) (stating that "the issue of appealability under § 1291 is to be determined for the entire category to which a claim belongs, without regard to the chance that the litigation at hand might be speeded, or a particular injustice averted" (internal quotation marks omitted)); *see also* 15A Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure—Jurisdiction* § 3911 (2d ed. Supp.2011) ("The Court has explicitly recognized the value of clear rules for collateral-order appeals, suggesting that it is better to determine appealability with respect to categories of orders rather than on a case-by-case basis."). Following our decision today, litigants will be uncertain whether an interlocutory order satisfies our amorphous, ad hoc test for an immediately appealable order in a criminal case. Similarly, the case-by-case test the court articulates will require the court of appeals to decide on an ad hoc basis whether particular orders, not particular *types* of orders, are immediately appealable. In my view, the court's approach will undermine judicial economy because it will require courts and litigants to guess whether a particular order is immediately appealable as of right.

Second, and more fundamentally, the court's approach creates the equivalent of a common law of jurisdiction, which is inconsistent with our traditional approach of resting subject matter jurisdiction on the interpretation of constitutional provisions, statutes, and procedural rules. *See, e.g., Reed v. State,* 793 N.W.2d 725, 731 (Minn.2010) (stating that subject matter jurisdiction relates "to the courts' statutory or constitutional *power* to adjudicate the case" (internal quotation marks omitted)); *Tischer v. Hous. & Redev. Auth.,* 693 N.W.2d 426, 429–30 (Minn.2005) (interpreting a statute to determine whether the district courts had jurisdiction over a plaintiff's wrongful termination claim); *State v. Radosevich,* 249 Minn. 268, 271, 82 N.W.2d 70, 72 (1957) ("It is elementary that the right of appeal under our condemnation proceedings is governed by statute and that, unless the conditions prescribed by statute are observed, the court acquires no jurisdiction."). Instead of applying the language of the Minnesota Constitution, a statute, or a procedural rule to determine subject matter jurisdiction, the court's approach requires us to balance several factors to determine whether the posture and facts of a particular case, in our view, are sufficient to permit an immediate appeal of an interlocutory order. I cannot join the court's ad hoc, common law approach to the collateral order doctrine.

Indeed, the court's ad hoc approach is not only at odds with our most recent

decision on the collateral order doctrine,[1] it is unnecessary given the language of Minn. Stat. § 480A.06, subd. 1 (2010). Minnesota Statutes § 480A.06, subd. 1, provides that "[t]he Court of Appeals has jurisdiction of appeals from *all final decisions* of the trial courts." (Emphasis added.) The language in section 480A.06, subdivision 1, is materially identical to the provision in the United States Code that is the statutory basis for the collateral order doctrine, 28 U.S.C. § 1291 (2006). *See* 28 U.S.C. § 1291 (stating that "[t]he courts of appeals ... shall have jurisdiction of appeals from *all final decisions* of the district courts of the United States" (emphasis added)). Applying 28 U.S.C. § 1291, the Supreme Court long ago recognized that the collateral order doctrine is equally applicable to both civil and criminal proceedings. *See Abney v. United States,* 431 U.S. 651, 659 n. 4, 97 S.Ct. 2034, 52 L.Ed.2d 651 (1977).

Given the identical operative language of Minn.Stat. § 480A.06, subd. 1, and 28 U.S.C. § 1291, as well as our across-the-board adoption of the collateral order doctrine in civil matters in *Kastner v. Star Trails Ass'n,* 646 N.W.2d 235, 240 (Minn. 2002), I cannot think of any reason why the collateral order doctrine should not be *fully* extended to criminal matters, including this one. *See Anderson v. City of Hopkins,* 393 N.W.2d 363, 364 (Minn.1986) (citing *Abney* favorably). Thus, while I agree with the court's conclusion that the collateral order doctrine permits immediate appellate review of the district court's

order denying Ali's motion to dismiss for lack of subject matter jurisdiction, I would rest that conclusion on Minn.Stat. § 480A.06, subd. 1, rather than the case-by-case approach adopted by the court.

---

**1.** It is true that, prior to our decision in *Kastner v. Star Trails Ass'n,* 646 N.W.2d 235, 240 (Minn.2002), we engaged in a case-by-case application of the collateral order doctrine that mirrors the approach the court adopts here. *See McGowan v. Our Savior's Lutheran Church,* 527 N.W.2d 830, 832–33 (Minn.1995); *Anderson v. City of Hopkins,* 393 N.W.2d 363, 364 (Minn.1986). However, it is my view that we should adopt the approach of *Kastner,* our most recent discussion of the collateral order doctrine, in which we "formally adopt[ed] the collateral order doctrine as a clear analytical framework to assess the immediate appealability of an order or judgment." *Kastner,* 646 N.W.2d at 240. Because we have already adopted the collateral order doctrine in all civil cases, we should logically extend *Kastner* to criminal matters as well.